**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| David Lopez Gonzales, | No. CV-18-01907-PHX-ROS |
| Petitioner, | **ORDER** |
| v. | |
| David Shinn, et al., | |
| Respondents. | |

In 2013, Petitioner David Lopez Gonzales ("Gonzales") was convicted in state court of seven counts of sexual abuse, one count of molestation of a child, and two counts of sexual conduct with a minor. After pursuing a direct appeal, as well as three post-conviction relief proceedings in state court, Gonzales filed a petition for writ of habeas corpus in this court. Magistrate Judge Deborah M. Fine issued a Report and Recommendation concluding Gonzales was not entitled to relief and that Grounds 1(c), 2(b), 2(c), 2(d), 2(h), 2(i), 5(g) through 5(j), 7(a) through 7(c), and 11 are technically exhausted and procedurally defaulted; Grounds 5(f), 6, and 8 are procedurally defaulted under an express procedural bar; Grounds 3, 5(c), and 7(d) are not cognizable under federal habeas review; and Grounds 1(a), 1(b), 2(a), 2(e), 2(f), 2(g), 2(h), 4, 5(a), 5(b), 5(d), 5(e), 9, 10(a) through 10(g), 12, and 13 fail on the merits. (Doc. 59.) Gonzales filed objections, and Respondents replied. (Docs. 60, 61.) Having reviewed each ground for relief, the recommendations will be adopted. Also, Gonzales' motions for discovery and for leave to file a reply will be denied.

**BACKGROUND**

Gonzales does not object to the factual background set forth in the Report and Recommendation ("R&R"). Therefore, that background will be adopted in full. The facts underlying his convictions are as follows. "Starting in 1990 or 1991, [Gonzales] began a romantic relationship with A.A., mother to T.Y., who was then six or seven years old. [Gonzales] began living with A.A. and her children, including T.Y., soon thereafter." (Doc. 59 at 2.) On four separate occasions when T.Y. was between ten and twelve years old, Gonzales touched T.Y.'s breasts with his hands, including one occasion on which T.Y. could feel Gonzales' "erect penis against her bottom." (Doc. 59 at 2–3.) On a fifth occasion, Gonzales asked T.Y. to touch his penis, "then held her hand on his penis and moved it around." (Doc. 59 at 3.) On a sixth occasion, Gonzales "touched T.Y.'s breasts with his hands and made her touch his penis with her hands and move them." (Doc. 59 at 3.) On a seventh occasion, Gonzales, "sitting on his and A.A.'s bed, directed T.Y. to kneel on the floor and close her eyes. When T.Y. opened her eyes, she saw [Gonzales] pulling back the skin of his penis. [Gonzales] then forced T.Y.'s head down so that the top of her lip touched his penis." (Doc. 59 at 3.) In addition, "T.Y.'s cousin C.S. lived with the family for two years, starting when she was eleven years old and T.Y. was ten years old." (Doc. 59 at 3.) Gonzales touched C.S.'s breasts in the context of play-wrestling several times, and once sucked on her breasts. (Doc. 59 at 3.)

These incidents occurred in the mid-1990s. A few years after the incidents, when T.Y. was in middle school, she told her mother about Gonzales inappropriately touching her and her sister, but A.A. did not take action. (Doc. 59 at 3.) T.Y. "felt betrayed by A.A. and did not again raise the matter with her," and did not contact law enforcement. (Doc. 59 at 3.) C.S. did not disclose Gonzales' conduct because "she did not trust anybody and wanted to put the incidents behind her." (Doc. 59 at 3.) In 2002, when T.Y. was 17, she was questioned at the scene of a violent altercation between Gonzales and one of her uncles and told a detective she had been victimized, although she recanted to a different detective "because she felt overwhelmed and afraid." (Doc. 59 at 3.) In 2011, A.A. asked T.Y. to

come forward to law enforcement, and T.Y. disclosed Gonzales' conduct. (Doc. 59 at 3.) T.Y. mentioned C.S. had been a victim, and C.S. then disclosed her own victimization. (Doc. 59 at 3.)

In 2012, Gonzales was charged with 18 counts of dangerous crimes against children, specifically: "five counts of sexual conduct with a minor, each a Class 2 felony; nine counts of sexual abuse, eight of which were charged as Class 3 felonies and one of which was charged as a Class 5 felony; and four counts of molestation of a child, each a Class 2 felony." (Doc. 59 at 4.) These counts were based on the acts involving T.Y. and C.S. as well as additional acts involving Gonzales' daughter, A.Y. Gonzales testified at trial and "denied ever having touched T.Y. or C.S. in any inappropriate manner, and his witnesses denied ever having seen any such behavior." (Doc. 59 at 4.) Gonzales "also disputed the timeline established by the state. According to the defense evidence, [Gonzales] did not begin dating and living with A.A. until 1995, and even thereafter was rarely around A.A.'s children because of his work obligations." Gonzales "testified that he had first heard of the accusations against him in connection with the 2002 altercation, and that the accusations resurfaced in 2011 at a time when he was engaged in a divorce and custody dispute with A.A. and had started dating another woman." (Doc. 59 at 4.)

Some of the charges were dismissed during trial, and the jury found Gonzales not guilty of several counts related to his daughter A.Y. and "not guilty of one count of sexual conduct with a minor as to T.Y." (Doc. 59 at 4.) The jury returned guilty verdicts for "two counts of sexual abuse as to C.S., five counts of sexual abuse as to T.Y., one count of molestation of a child as to T.Y., and two counts of sexual conduct with a minor as to T.Y." (Doc. 59 at 4.) The superior court sentenced Gonzales to the presumptive term for each count, consecutively, resulting in a total sentence of 92 years. (Doc. 59 at 5.)

On direct appeal, Gonzales' appointed counsel filed a brief pursuant to *Anders v. California*, 386 U.S. 738 (1967), stating counsel was unable to identify an arguable, nonfrivolous question of law. Gonzales filed *pro per* briefing arguing actual innocence, judicial bias, prosecutorial misconduct, and ineffective assistance of counsel. The Arizona

Court of Appeals ordered supplemental briefing on whether the conviction and sentence on Count 13 was fundamental error in light of the jury's not guilty verdict on Count 11. (Doc. 59 at 5.) The Arizona Court of Appeals subsequently vacated the conviction and sentence for but affirmed the convictions and sentences for the other counts. In doing so, the Arizona Court of Appeals addressed Gonzales' arguments regarding the grand jury proceedings jury composition, alleged prosecutorial misconduct, the trial court's amendment of the indictment, jury instructions and verdict forms, sufficiency of the evidence on Gonzales' convictions, legality of the sentences, and alleged judicial bias. (Doc. 45-3 at 74–86.)

In 2016, Gonzales filed a Notice of Post-Conviction Relief ("PCR") in state court, and Gonzales' appointed counsel then filed a notice of completion tendering "a good faith belief that no basis in fact and/or law for post-conviction relief exists on this record." (Doc. 45-3 at 128.) Gonzales proceeded *pro per* on a variety of claims. (Doc. 59 at 6.) The superior court denied relief, finding the claims of "prosecutorial misconduct; violation of fundamental fairness of the trial proceedings; unconstitutionally suppressed evidence: perjured testimony; violation of constitutional rights; insufficient evidence; failure to disclose exculpatory evidence; credibility of witnesses; flawed grand jury proceedings; improper 404(b) evidence; and the State's improper closing argument" to be precluded under Arizona Rule of Criminal Procedure 32.2(a) because those claims either should have been raised on direct appeal or had been resolved on direct appeal. (Doc. 45-4 at 72.) The superior court found Gonzales' claim of obstruction by the state of his right to appeal to be unsubstantiated, and found his claims of newly discovered evidence, actual innocence, and ineffective assistance failed on the merits. (Doc. 45-4 at 72–73.) The Arizona Court of Appeals affirmed the superior court's ruling, and the Arizona Supreme Court denied the petition for review. (Doc. 59 at 8.)

In May 2017, Gonzales filed a second PCR, arguing the law (specifically, the statutes regarding sexual contact, A.R.S. §§ 13-1404, 13-1407, and 13-1410) had been changed by *May v. Ryan*, 245 F. Supp. 3d 1145 (D. Ariz. 2017). (Doc. 45-5 at 104–107.)

The superior court summarily dismissed the second PCR, and denied Gonzales' subsequent motion for reconsideration. (Doc. 45-5 at 149–160.)

In October 2017, Gonzales filed a third PCR, arguing the "newly discovered material fact . . . that A.R.S. 13-604 in its entirety was recognized as unconstitutional." (Doc. 45-5 at 162–165.) The superior court held the third PCR untimely and successive, and dismissed it. (Doc. 45-5 at 175–178.) The Arizona Court of Appeals granted review and denied relief, finding Gonzales failed to show an abuse of discretion. (Doc. 45-5 at 181.)

Gonzales filed the present case in June 2018 and filed his Third Amended Petition for habeas relief in January 2019, broadly asserting 13 grounds for relief. (Doc. 33.) Respondents identified 38 claims or sub-claims and addressed them individually, and the R&R adopted Respondents' identification of sub-claims. The Court does so as well. The grounds of Gonzales' petition are as follows.

**Ground 1**: Prosecutorial misconduct in violation of constitutional due process rights under the Fifth, Sixth, and Fourteenth Amendments when the prosecution:

**1(a)** Violated its duty to disclose exculpatory evidence under *Brady v. Maryland*;

**1(b)** Improperly elicited false testimony by a government witness through leading questions and then failing to correct the false testimony; and

**1(c)** Relied on false or perjured testimony in closing argument.

**Ground 2**: Ineffective assistance of counsel in violation of due process protections under the Fifth and Fourteenth Amendments and right to effective assistance of counsel under the Sixth Amendment when:

*Trial counsel:*

**2(a)** Failed to investigate where Gonzales' victims lived during the time of the charges against Gonzales or otherwise investigate for evidence to impeach the prosecution's witnesses or evidence to support defense witness testimony;

**2(b)** Failed to consult with an expert or have an expert testify at trial;

**2(c)** Did not object when the superior court amended the indictment to conform to the evidence;

**2(d)** Did not object to Gonzales' alleged illegal sentence;

**2(e)** Allowed erroneous jury instructions;

**2(f)** Allowed erroneous verdict forms; and

**2(g)** Refused to file a notice of appeal.

*Appellate counsel:*

**2(h)** Filed an *Anders* brief when there were colorable claims to assert.

*PCR counsel:*

**2(i)** Filed an *Anders* brief although substantial claims could have been presented.

<u>**Ground 3**</u>: Violation of due process rights under the Fifth, Sixth, and Fourteenth Amendments when the trial court amended the indictment during a Rule 20 hearing to conform the indictment to the evidence.

<u>**Ground 4**</u>: Violation of due process rights under the Fifth, Sixth, and Fourteenth Amendments when a state official failed to disclose exculpatory and impeachment evidence.

<u>**Ground 5**</u>: Judicial error in violation of the due process right to a fair trial pursuant to the Fifth and Fourteenth Amendments when:

*The trial court judge:*

**5(a)** Permitted erroneous verdict forms to go to the jury;

**5(b)** Failed to give a jury instruction on the defense theory of the case;

**5(c)** Improperly amended the indictment to conform to the evidence;

**5(d)** Failed to give a jury instruction on defenses for sexual misconduct;

**5(e)** Allowed the jury to consider perjured and hearsay testimony during deliberation; and

**5(f)** Sentenced Gonzales to an illegal sentence.

*The superior court, in the PCR actions:*

 **5(g)** Did not grant Gonzales an evidentiary hearing;

 **5(h)** Did not consider Gonzales' new evidence;

 **5(i)** Failed to consider Gonzales' ineffective of assistance of counsel claim; and

 **5(j)** Did not compel the prosecution to disclose exculpatory evidence.

**Ground 6**: Illegal sentences in violation of Fifth and Fourteenth Amendment due process rights and of Gonzales' "right to have the jury determination to enhance [his] sentence from a nondangerous to dangerous in the first or second degree." (Doc. 33 at 11).

**Ground 7**: "Fatally flawed" grand jury indictment violated rights under the Fourth, Fifth, Sixth, and Fourteenth Amendments.

**Ground 8**: Rights under the Fourth, Fifth, Sixth, and Fourteenth Amendments were violated when Gonzales was convicted pursuant to A.R.S. §§ 13-1404, -1405, 1407, and -1410 without the state proving sexual intent.

**Ground 9**: Fourth, Fifth, Sixth, and Fourteenth Amendment rights were violated by the use of erroneous verdict forms that omitted a timeline, the actus rea, and the location of the crimes alleged.

**Ground 10**: Erroneous jury instructions violated Fourth, Fifth, Sixth, and Fourteenth Amendment rights because the instructions:

 **10(a)** Did not include the defenses for sexual offenses;

 **10(b)** Did not include the defense theory of the case;

 **10(c)** Did not inform jurors that that the state was required to prove the essential elements of the crimes charged beyond a reasonable doubt;

 **10(d)** Misled jurors into concluding that Gonzales "did not present any evidence";

 **10(e)** Permitted jurors to consider hearsay statements during deliberation;

 **10(f)** In effect "lowered the state's burden of proof"; and

**10(g)** Violated Gonzales' right to a complete defense.

**Ground 11**: Violation of due process rights under the Fifth and Fourteenth Amendments because the statute of limitations had expired.

**Ground 12**: Violation of Fourth, Fifth, Sixth, and Fourteenth Amendment rights by a fundamentally unfair judicial process under which false testimony was used to obtain Gonzales' indictment, hold him without bail, and convict him, while the state "refuse[d] to disclose the exculpatory evidence which will prove [his] actual innocence."

**Ground 13**: Actual innocence.

(Doc. 33.)

The R&R concludes that Grounds 1(c), 2(b), 2(c), 2(d), 2(h), 2(i), 5(g) through 5(j), 7(a) through (c), and 11 are technically exhausted and procedurally defaulted; Grounds 5(f), 6, and 8 are procedurally defaulted under an express procedural bar; Grounds 3, 5(c), and 7(d) are not cognizable under federal habeas review; and Grounds 1(a), 1(b), 2(a), 2(e), 2(f), 2(g), 2(h), 4, 5(a), 5(b), 5(d), 5(e), 9, 10(a) through 10(g), 12, and 13 fail on the merits.

## ANALYSIS

**I.     Procedural Default: Grounds 1(c), 2(b), 2(c), 2(d), 2(h), 2(i), 5(f) through 5(j), 6, 7(a) through 7(c), 8, and 11**

The R&R concludes that Grounds 1(c), 2(b), 2(c), 2(d), 2(h), 2(i), 5(g) through 5(j), 7(a) through 7(c), and 11 are technically exhausted and procedurally defaulted under Arizona Rule of Criminal Procedure 32.2(a)(3). (Doc. 59 at 18–23.) This rule precludes post-conviction relief on claims that could have been raised and adjudicated on direct appeal. And, pursuant to Arizona Rule of Criminal Procedure 32.4, many of these claims are now time-barred. The R&R also concludes that Grounds 5(f), 6, and 8 are procedurally barred because, as the superior court explicitly held in response to Gonzales' second and third PCRs, Gonzales could have raised the claims on direct appeal but did not, and the claims are precluded pursuant to Rule 32.2(a)(3). (Doc. 59 at 20, 22, Doc. 45-5 at 150, 176.) Gonzales objects to the R&R by claiming the failure to present these issues on appeal was due to the ineffective assistance of his trial and appellate counsel. (Doc. 60 at 17.)

Ineffective assistance of counsel can, in some circumstances, excuse the procedural default of claims. *See Edwards v. Carpenter*, 529 U.S. 446, 452 (2000) ("A claim of ineffective assistance . . . generally must be presented to the state courts as an independent claim before it may be used to establish cause for a procedural default.") (cleaned up). But, as explored later, Gonzales has not established he suffered ineffective assistance of counsel.

Nor has Gonzales established any other basis on which to excuse the procedural default of these claims, as the record does not support both the conclusion that Gonzales could demonstrate he is actually innocent of his convictions based on any new reliable evidence and a showing that "it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence." *McQuiggin v. Perkins*, 569 U.S. 383, 399 (2013) (quoting *Schlup v. Delo*, 513 U.S. 298, 327 (1995)). Gonzales is not entitled to relief on Grounds 1(c), 2(b), 2(c), 2(d), 2(h), 2(i), 5(f) through 5(j), 6, 7(a) through 7(c), 8, and 11.

**II.    Not Cognizable Under Federal Habeas Review: Grounds 3, 5(c), 7(d)**

The R&R concludes Grounds 3 and 5(c) are not cognizable under federal habeas review because they essentially challenge the procedures used to amend the indictment, thus posing a state law issue rather than a federal one. *Poland v. Stewart*, 169 F.3d 573, 584 (9th Cir. 1999); Doc. 59 at 26. Further, the R&R concludes that, because the Due Process Clause "does not require the States to observe the Fifth Amendment's provision for presentment or indictment by a grand jury," Grounds 3, 5(c), and 7(d) do not provide a basis for federal habeas relief. *Alexander v. Louisiana*, 405 U.S. 625, 633 (1972); Doc. 59 at 26. Gonzales has not objected to these findings, and he is not entitled to relief on Grounds 3, 5(c), and 7(d).

**III.   Merits Review: Grounds 1(a), 1(b), 2(a), 2(e), 2(f), 2(g), 2(h), 4, 5(a), 5(b), 5(d), 5(e), 9, 10(a) through 10(g), 12, and 13**

The R&R concludes Gonzales has failed to show that the state courts' rulings on Grounds 1(a), 1(b), 2(a), 2(e) through 2(h), 4, 5(a), 5(b), 5(d), 5(e), 9, 10(a) through 10(g), 12, and 13 were contrary to, or involved an unreasonable application of, clearly established

1 federal law, or that the rulings were based on an unreasonable determination of the facts in
2 light of the evidence presented in the state court proceedings, and therefore fail on the
3 merits. Doc. 59 at 26–51; 28 U.S.C. § 2254(d).

### A. Grounds 1(a) and 4

Gonzales is currently incarcerated on nine counts: one count of sexual abuse of T.Y. at the "75th Avenue and Indian School address"; two counts of sexual abuse, one count of molestation of a child, and one count of sexual conduct with a minor of T.Y. at the "Central and Southern address"; two counts of sexual abuse of T.Y. at the "61st Avenue and Glendale address"; and two counts of sexual abuse of C.S. (Doc. 45-1 at 177–181, 183, 185–187.) The indictment charged with regard to T.Y. that the incident at the 75th Avenue and Indian School address took place between September 26, 1994 and September 25, 1995; the incidents at the Central and Southern address took place between September 26, 1995 and September 25, 1997; and the incidents at the 61st Avenue and Glendale address took place between September 26, 1996 and September 25, 1997. Doc. 45-1 at 7–9. And the indictment charged with regard to C.S. that the incidents took place between February 6, 1994 and February 5, 1995. (Doc. 45-1 at 9–10.)

Gonzales' argument, as set forth in his habeas petition, his objections to the R&R, and his various requests for exculpatory evidence, is that C.S.'s Child Protection Services ("CPS") and/or school records, and A.A.'s Section 8 records and/or T.Y.'s school records, constitute exculpatory evidence that should have been turned over. That evidence allegedly would have contradicted by the dates alleged in the indictment by establishing C.S. did not live with A.A. between February 6, 1994 and February 5, 1995 and T.Y. did not live at the 61st Avenue and Glendale address between September 26, 1996 and September 25, 1997. (Doc. 34 at 7–9; Doc. 64 at 3.) Thus, Ground 1(a) claims the state violated its obligations under *Brady v. Maryland*, 373 U.S. 83 (1963) and *Giglio v. United States*, 405 U.S. 150 (1972) when it failed to disclose the allegedly exculpatory CPS, school, and Section 8 records. (Doc. 33 at 6, 34 at 8–9.)

According to the record, Gonzales' trial counsel asked the prosecution for all "CPS

records relating to the alleged victims," the prosecution made a public records request for these records, and the CPS records were produced to Gonzales' trial counsel several months before trial. (Doc. 45-5 at 52, 54–55, 57–58.) Strangely, the Arizona Court of Appeals appears to have based its analysis on the assumption that the CPS records were not, in fact, produced to Gonzales. But accepting that the records were not produced, that court held Gonzales failed to show the CPS records were material, since Gonzales did "not dispute that [C.S.] lived with him at some point when she was less than fifteen years old, the age required to support his convictions." (Doc. 45-3 at 80.)

The R&R concludes Gonzales "fails to establish a *Brady* violation as to CPS records because those records were disclosed well prior to trial," does not demonstrate any school or Section 8 records were suppressed, and merely speculates those records would be favorable, which is "insufficient to state a *Brady* claim." *Runningeagle v. Ryan*, 686 F. 3d 758, 769-71 (9th Cir. 2012). Gonzales objects to this conclusion, but only in general terms, and by repeating the Ninth Circuit's *Brady* jurisprudence and his speculative claims regarding the exculpatory content of the records. (Doc. 60 at 10, 19–22.)

*Brady/Giglio* claims have three elements: "(1) the evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; (2) that evidence must have been suppressed by the State, either willfully or inadvertently; and (3) prejudice must have ensued." *United States v. Kohring*, 637 F.3d 895, 901–02 (9th Cir. 2011) (quoting *United States v. Williams*, 547 F.3d 1187, 1202 (9th Cir. 2008)).

Gonzales' speculation regarding the possible content of unproduced evidence is not sufficient. Of particular importance, the Arizona Court of Appeals concluded that even if the records had established some discrepancy regarding the date of particular crimes, that would not have materially impacted the outcome because it was undisputed the victims lived with Gonzales at various times when they were under the age of fifteen. That was not an unreasonable application of *Brady* and Gonzales is not entitled to relief on Ground 1(a). Furthermore, Gonzales admits his Ground 4 claim "is a *Brady* claim," and for the reasons set forth above, Gonzales is not entitled to relief on Ground 4.

**B. False Testimony: Grounds 1(b), 5(e), and 12**

Grounds 1(b), 5(e), and 12 relate to the allegedly false testimony of Detective Scheffer, Gonzales' ex-wife A.A., and C.S. Gonzales does not object to the Magistrate Judge's recommendation that Grounds 1(b) and 12 be denied, and absent any objection, there is no need to review the Magistrate Judge's reasoning. Gonzales is not entitled to relief on Grounds 1(b) and 12.

Ground 5(e) is that the trial judge allowed the jury to consider perjured and hearsay testimony during deliberation. In particular, the trial judge allowed A.A. to offer inaccurate dates regarding her divorce and custody dispute with Gonzales. The R&R viewed this as presenting a *Napue* claim. *Napue* claims have three elements: "(1) the testimony (or evidence) was actually false, (2) the prosecution knew or should have known that the testimony was actually false, and (3) that the false testimony was material." *United States v. Zuno-Arce*, 339 F.3d 886, 889 (9th Cir. 2003) (citing *Napue*, 360 U.S. at 269–71). The R&R, after examining the divorce decree, concludes A.A.'s first statement, that she was involved in a divorce and custody dispute with Gonzales in 2011, was accurate while "her subsequent contradictory statements . . . [were] not accurate." (Doc. 59 at 35.)

Based on the divorce decree, Gonzales has established that A.A. presented false testimony. But Gonzales has failed to establish the second element, that the prosecutor who elicited A.A's false testimony (that in July 2011, she was "already divorced" from Gonzales and had resolved custody) knew or should have known it was false. Gonzales objects it is "undisputed" that "[t]he police reports prove that [testimony] was a lie and the detective knew it was a lie." (Doc. 60 at 14.) But the R&R directly addressed this argument, stating first Gonzales failed to establish the detective knew about the timing of the divorce proceedings, and second Gonzales failed adequately to allege the prosecutor knew about the timing of the divorce proceedings. (Doc. 59 at 35.) Gonzales' only objection to this latter conclusion is "This is a complete contradiction with line 5." Line 5 of that page contains the R&R's conclusion that Gonzales did not establish the prosecution knew or should have known A.A.'s second statement was false. The Arizona Court of Appeals

concluded Gonzales' contentions were "unsupported," "[n]othing in the record suggests that the prosecutor engaged in misconduct, much less intentional misconduct, with respect to the evidence presented to the jury," and "the credibility of the witnesses was for the jury to decide." (Doc. 45-3 at 80.) Crucially, it is not clearly established that knowledge of a detective should be imputed to a prosecutor for purposes of a *Napue* claim. *Reis-Campos v. Biter*, 832 F.3d 968, 977 (9th Cir. 2016). Thus, even if the detective knew A.A.'s testimony was false, that is not enough.

While Gonzales' objections establish he disagrees with these conclusions, his objections do not establish those decisions would support relief under 28 U.S.C. § 2254(d). Gonzales is not entitled to relief on Grounds 1(b), 5(e), and 12.

**C. Ineffective Assistance of Counsel: Grounds 2(a), 2(e), 2(f), 2(g), and 2(h)**

The R&R recommends Grounds 2(a), 2(e), 2(f), 2(g), and 2(h) be denied. Gonzales objects only to the recommendation concerning Ground 2(a), inadequate investigation. Absent any objection, there is no need to review the Magistrate Judge's reasoning, and Gonzales is not entitled to relief on Grounds 2(e), 2(f), 2(g), and 2(h).

The superior court held neither the first prong of *Strickland v. Washington*, requiring deficient performance, nor the second prong, requiring prejudice, was met. Doc. 45-5 at 73; 466 U.S. 668, 687–88 (1984). The Arizona Court of Appeals summarily affirmed that ruling. The R&R does not address the first prong. Instead, the R&R concludes Gonzales cannot establish prejudice because his argument is based on speculation and he himself "testified about where and when he lived with A.A. and the girls," after paying $5,000 "to an investigator that trial counsel told them to hire." (Doc. 59 at 37-38.)

Gonzales now objects that his "family got the information . . . through a site on the internet" but his counsel "told [Gonzales] that we could not use that information because a person can get anything off the internet it does not mean it[']s true," and therefore his "family waste[d] $5,000 they did not have to waste." (Doc. 60 at 15-16.) Gonzales argues his counsel "failed to investigate this information and left [Gonzales] to assert these claims at trial without any substantial evidence to back it up." (Doc. 60 at 15.) Even assuming

1  Gonzales were able to establish deficient performance, he has not made a sufficient
2  showing of prejudice because mere speculation about what the records might have
3  contained, and how the jury might have weighed the evidence, "is plainly insufficient to
4  establish prejudice." *Gonzalez v. Knowles*, 515 F.3d 1006, 1016 (9th Cir. 2008); *Strickland*,
5  466 U.S. at 694 (Gonzales must show "a probability sufficient to undermine confidence in
6  the outcome" that, but for the allegedly inadequate investigation, "the result of the
7  proceeding would have been different."); *see Djerf v. Ryan*, 931 F.3d 870, 883 (9th Cir.
8  2019) (speculation regarding "what evidence counsel would have uncovered had they more
9  vigorously investigated . . . rarely creates a 'reasonable probability' that a different result
10 would have occurred absent the purportedly deficient representation."). Gonzales fails to
11 show the Arizona Court of Appeals' holding involved an unreasonable application of
12 *Strickland*, and he is not entitled to relief on Ground 2(a).

### D. Erroneous Verdict Form: Grounds 5(a) and 9

Gonzales provides no specific objection to the recommendation concerning Grounds 5(a) and 9, merely the general objection "if you look at the verdict forms you will see the magistrate is mistaken." Absent a specific objection, there is no need to review the Magistrate Judge's reasoning, and Gonzales is not entitled to relief on Grounds 5(a) and 9.

### E. Jury Instructions: Grounds 5(b), 5(d), 10(a), 10(b), 10(c), 10(d), 10(e), 10(f), and 10(g)

Gonzales does not object to the Magistrate Judge's recommendation that Grounds 5(b), 5(d), 10(a), 10(b), 10(d), 10(e), 10(f), and 10(g) be denied, and absent any objection, there is no need to review the Magistrate Judge's reasoning. Gonzales is not entitled to relief on Grounds 5(b), 5(d), 10(a), 10(b), 10(d), 10(e), 10(f), and 10(g).

With regard to Ground 10(c), the Arizona Court of Appeals said the jury "was instructed on 'sexual contact' consistent with A.R.S. [section] 13-1401(2), which defines the term . . . without regard to the defendant's intent," but Gonzales objects that sexual interest was an essential element of the charged offenses "[a]t the time [the] crimes were alleged to have been committed," and the jury should have been so instructed. (Docs. 45-

3 at 81–82, 60 at 24.) Because sexual intent was not, in fact, an element of the offense at the time of Gonzales' crimes in 1994–1997, his objection lacks a viable legal basis. *May*, 245 F. Supp. 3d 1145, 1155 (D. Ariz. 2017) (noting in 1993 the statute was amended, and "the new language, which omitted the verb 'molests,' eliminated sexual intent as an element of the crime"). Gonzales fails to establish the Arizona Court of Appeals' conclusion was an unreasonable application of Supreme Court authority, and he is not entitled to relief on Ground 10(c).

### F. Ground 13

Finally, with regard to Ground 13, the claim of actual innocence, the R&R notes the threshold for a freestanding innocence claim on federal habeas review of a non-capital crime is "extraordinarily high." *Herrera v. Collins*, 506 U.S. 390, 417 (1993); *Gimenez v. Ochoa*, 821 F.3d 1136, 1145 (9th Cir. 2016) (a petitioner claiming actual innocence must "affirmatively prove that he is probably innocent") (quoting *Carriger v. Stewart*, 132 F.3d 463, 576 (9th Cir. 1997) (en banc)). The R&R notes Gonzales' claim of actual innocence is "based on his mere speculation that records exist that could establish that T.Y. and C.S. lived with him outside of the date range they testified he sexually abused them," and concludes "[i]f such evidence exists, it would not represent proof that Petitioner was probably innocent" because "the jury was presented with conflicting evidence on the dates where A.A. and Petitioner lived during the periods the sexual abuse occurred, but even Petitioner's testimony placed C.S. and T.Y. living with him when each was younger than 15." (Doc. 59 at 50.) Gonzales objects "An alibi defense if proven is not a freestanding claim of actual innocence." (Doc. 60 at 7.)

Gonzales has failed to establish the Arizona Court of Appeals' decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by" the Supreme Court or that the decision was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," 28 U.S.C. § 2254(d), and is not entitled to relief on Ground 13.

### IV. Other Pending Motions

Gonzales has also filed a motion for leave to reply in support of his objections to the R&R (Doc. 62); a motion requesting discovery to obtain exculpatory material (Doc. 64); and a motion to place the state in default on his request for admissions (Doc. 69). Neither this Court nor the Federal Rules of Civil Procedure permit replies in support of objections to reports and recommendations, and Gonzales' motion for leave to reply will be denied. Nor is there a right to discovery in habeas cases. Fed. R. Civ. P. 26(a)(1)(B); *Bittaker v. Woodford*, 331 F. 3d 715, 728 (9th Cir. 2003). The Court declines to grant leave for discovery. Finally, the discovery motions are futile because *Cullen v. Pinholster* bars consideration of new evidence. 563 U.S. 170, 181 (2011) ("[E]vidence introduced in federal court has no bearing on § 2254(d)(1) review. If a claim has been adjudicated on the merits by a state court, a federal habeas petitioner must overcome the limitation of § 2254(d)(1) on the record that was before that state court."); *see Runningeagle*, 686 F.3d at 773–74; *Kemp v. Ryan*, 638 F.3d 1245, 1260 (9th Cir. 2011). Gonzales' discovery motions will be denied.

Accordingly,

**IT IS ORDERED** the Report and Recommendation (Doc. 59) is **ADOPTED**.

**IT IS FURTHER ORDERED** the Third Amended Petition for Writ of Habeas Corpus (Doc. 33) is **DENIED** and **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** Gonzales' motions for leave to file a reply (Doc. 62) and for discovery (Docs. 64, 69) are **DENIED**.

…

…

…

…

…

…

…

**IT IS FURTHER ORDERED** a Certificate of Appealability and leave to proceed in forma pauperis on appeal are **DENIED** because dismissal of portions of the petition is justified by a plain procedural bar and jurists of reason would not find the procedural ruling debatable and because the portions of the petition not procedurally barred do not make a substantial showing of the denial of a constitutional right.

Dated this 15th day of October, 2020.

Honorable Roslyn O. Silver
Senior United States District Judge